Parker C. J.
delivered the opinion of the Court. Thi scire facias is brought in order to obtain execution for a stir supposed to be in the hands of the trustee, not disclosed or paid over by him on execution, consisting of the difference of exchange, the interest upon the balance of the account between him and Williams, and the sum retained for expenses ; and we are to determine whether all or either of these items are chargeable upon the trustee in this suit.
In regard to the exchange, it appears by the answers, that it was considerably above par at the time of the service of the writ; so that if a remittance had been made by bills, 10 or 12 per cent advance must have been paid for them ; and the debt being to be paid in England, justice, as well as the usage of business, it is thought, requires that the creditor should receive the full value of his debt there.
We do not find however any authority for making this the rate of damages, when a foreign creditor sues for his debt in this country, except in the case of a dishonored bill of exchange ; in which case, by general usage, the rate of exchange is estimated as part of the damages to be recovered. This is supposed to be founded on the custom of merchants, and seems limited to the case of a protested bill of exchange ; and different usages prevail in different countries, in regard to the amount to be allowed and the manner in which it shall be done, it.being included in the sum allowed for damages, which in Massachusetts was formerly 10 per cent, as stated in the case of Grimshaio v. Bender, and 20 per cent in New York and Pennsylvania, by statute.
By St. 1825, c- 177, of this Commonwealth, it is now set tied, that bills on Europe, payable there but protested and sent back, shall be recovered against the drawer or indorser here, with the current rate of exchange,'and five per cent in addition thereto, with interest on the contents from the time when the same shall be refused acceptance or payment.
The ground upon which the original usage and the statute *273 R.ns have been adopted, is the great inconvenience and 6 intent of business which may occur, in consequence of vappointment in regard to funds relied upon, where a bill Ivn upon a foreign country. The same reason does not to balances of accounts, and there is no case decided, hich any thing beyond the debt due and interest has been wed in a suit commenced here by a foreign merchant, ex-jt one in the Circuit Court of the United States for Penn■vania, which will be presently cited and remarked upon.
The question came before the court in New York, in the ose of Martin v. Franklin, 4 Johns. R. 125. The suit was y an English merchant for the price of goods purchased in England by a merchant of New York the defendant. It was determined that he could recover only the amount due at the >ar'of exchange. And the same principle was decided in an>tber case, Scofield v. Day, 20 Johns. R. 102.
The only case which has been cited or which can be found, where the current rate of exchange was allowed in making up the judgment, except on bills of exchange, is in 2 Washington’s Cir. Ct. Rep. 167 ; but this is a <pase of very little authority, as the point was not started in a/rgument, and was settled by the court suddenly without advancing any reason in support of it.
-^■trRhglarrtr, where the custom of merchants has introduced this principle into the law, it is not applied to the acceptor of a bill who has refused to pay ; because his contract is only to pay the bill according to the face of it; but it is applied to drawers and indorsers, because they undertake that the bill shall be paid, and that they will indemnify the holder. Napier v. Schneider, 12 East, 420. Now the liability of a debtor on a balance of account, is not greater than that of an acceptor of a bill ; nor has the creditor suffered the disappointment from-the failure to remit, which the holder of a bill does at not finding funds in the country and in the hands to which he has been directed for them.
In the case of Martin v. Franklin above cited, the court give the true reasons why a debt sued in this country by a foreign merchant is not to be increased by the rate of exchange. They say, “ The debt is to be paid according to the par, and *274 not the rate of exchange. It is recoverable and payable here t0 th® plaintiffs or their agent; the courts are not to inquire inTo the disposition of the debt, after it reaches the hands of the agent. He may remit the debt to his principal in bills, or he may invest it here, or transmit it to some other part of the United States, or to other countries. We cannot trace the disposition which is to take place, nor award special damages upon such uncertain calculations. All that the plaintiffs can ask, is their debt, justly liquidated and paid, in the lawful currency of the United States.”
We subscribe to this doctrine, and are satisfied, that when the suit is brought in this Commonwealth by a foreign creditor, or by his creditor who sues here on the trustee process, the judgment can be only for the amount due at the par value of lawful money for sterling.
Whether the trustee is liable in this suit for interest on the balance in his hands, is the second question in this case. The Court have stated it to be their opinion, that he was chargeable with interest; but it having been suggested by one of his counsel, that on a former argument he was stopped upon this point, from which he inferred that the Court were with him, and being satisfied that such'1, an intimation w?as given, we thought proper to revise the decision arad, to receive an argument in writing ; which has since been given to us, and has due consideration. We however see no cause to revoke the decision. ■
It appears by the answer of the trustee, that an interest account was kept with him by Williams, and that he should have felt himself obliged to pay interest had he settled with Wil liams. It also appears, that when summoned as trustee, he did not set apart or deposit the amount of the balance due, but kept it mixed with his own funds, so that it formed part of his trading capital.
The first and principal objection to the allowance of interest is, that on the service of the trustee procees, the fund is locked up in the hands of the trustee, so that he is prevented by law from paying the debt, and is not at liberty to make any use of the fund ; so that the payment of interest, either to the princi *275 pal defendant or the attaching creditor, would be oppressive and unjust.^ _
_ The basis of the argument is undoubtedly sound, and if the fact corresponds with the legal supposition, the conclusion would be unavoidable. But if this locking up of the fund is merely a fiction, the trustee in truth making use of it all the time the matter is in suspense, to allow him the benefit of the principle would be to adopt the shadow for the substance.
Prima facie, the service of the trustee writ stays the property in the hands of the trustee, and the law considers that it remains in statu quo until the judgment; but if it appears by the answer, that the money is in constant use, or so mixed up with his general funds as to form part of his trading capital, the reason of the rule ceases, and so the rule itself ought not to be applied. It is said, that for aught which appears, the use of the money may have been prejudicial to the trustee, for he may have lost by his trade or speculations ; but the right to interest does not depend upon the successful use of money, but merely upon the use of it. He who uses it takes the risk of profit and loss.
To follow up the metaphor made use of by the trustee’s counsel; the service of the writ turned the key upon the fund, but the trustee keeps the key, unlocks the chest, and takes the money into his own hands. In such case he cannot be allowed to say, “ the fund was locked up and therefore I will pay nothing for the use of it.” This is the reason of the thing, and there is no authority against it.
The only case which bears upon the subject, and that is very distinguishable from this, is Prescott v. Parker, 4 Mass. R. 170. The trustee had been indebted to the principal on a judgment recovered against him, which was satisfied by paying after-attaching creditors ; so that he must have been discharged, unless he were liable for interest on the judgment; and it was determined he was not. The reason given is, that in the case of a judgment, interest is given only as damages for detention of the debt, and that as by the service of the trustee process he was restrained from paying, there could be no damages for detention.
The reason thus given suggests the important distinction be *276 tween that case and this ; between cases in which interest is g'ven by way of damages, and those in which it constitutes part of the debt; as contracts in which there is a promise to pay interest. In the former class it is obvious, that when one is summoned as trustee, he is in no fault for not paying, and as he made no agreement to pay interest, he ought not to be charged with it. In the latter, the interest is the debt, as much as the principal, and he ought to pay it, unless the use of the money has been actually prevented. The case before us is, in regard to interest, the same as if a promissory note had been given for the balance upon interest; for the defendant states that an interest account was kept, and if he had settled with Williams, he should have paid interest; it was therefore included in and a part of the contract.
But it is argued, that the creditor only attaches what is due at the time of the service of his writ; so that the trustee can be liable, on this process, for so much interest only as had previously accrued. But we think the attachment of the debt carries with it the interest, just as an increase of price or value of a chattel attached will be to the benefit of the attaching creditor, or the enhanced value of bank or other stock will be to his use. When indeed the debt bearing interest is attached, if instead of appropriating the sum due, the trustee uses it as before, he uses what by relation to the attachment may be considered as the creditor’s and not the principal’s money.
After viewing the subject on all sides, therefore, we are of opinion, that in this suit the trustee is answerable for interest on the balance of account, down to the time when the money was demanded on execution, the judgment on scire facias being restricted by the statute to the amount which ought to have been paid over on the first execution. St. 1794, c. 65, § 6.
Another question has arisen in this case, of some importance in practice, and which has not yet, to our knowledge, received a judicial determination in this Commonwealth. The trustee has reserved near 200 dollars to indemnify himself for the expenses of this and other suits, and we are called upon to decide whether he may lawfully retain this sum. There is no provision in the statute upon this subject. It gives costs to the trustee when he shah discharge himself, provided he offer tc *277 make his disclosure the first term; but when charged as trustee, he has not this partial relief. On the one hand it seems hard that the trustee, brought into court to answer for the delinquency of another, should be obliged to sustain the expense which in most cases will unavoidably arise, with little or no prospect of reimbursement from the principal; for generally he will be unable to pay. But on the other hand, it must be obvious, that great inconvenience will follow from allowing such a deduction from the funds as will amount to an indemnity ; for in many instances, such expenses would absorb all the funds ; so that the attaching creditor would get nothing, and the funds of the principal would be consumed without paying his debt.
Besides, the litigated cases are, in point of interest, between the trustee himself and the attaching creditor; as where the trustee claims the goods or money as his own, in which case he ought to bear the expense ; or between the attaching creditor and some other creditors claiming under the principal by assignment or otherwise ; in which case the trustee, we think, may insist upon an indemnity, before he discloses the facts which will enable the assignee to set up his claim, or at least he may be made to bear the expense of litigation, and in such case there'would be no propriety in diminishing the fund for the expenses of such litigation.
It may be observed, too, that in all cases of scire facias founded upon a supposed withholding of the funds, the fault is in the trustee ; he causes the expense and ought to pay it. In the original process in this case, the question whether trustee or not was controverted between the plaintiff, who was an attaching creditor, and the assignees of Williams under the commission of bankruptcy. The assignees or creditors of Williams were the parties in interest. The trustee could not, we think, have been compelled to disclose the proceedings under that commission, without an offer of indemnity against the expense of the suit. And as to the scire facias, the questions are entirely between the trustee and the attaching creditor, whether he should be charged with the rate of exchange, interest, &c. the expense of which he cannot justly charge upon the fund.
It must be seen, therefore, that no general rule can be' es *278 tablished, by which the trustee may indemnify himself out of the funds in his hands, for the expense he may be made liable to ; and we think there is no discretion in the court to allow a deduction or not, according to the exigency of the particular case. We feel therefore constrained to refuse the allowance' altogether, believing that the legislature, if it had intended such deductions should be made, would have enacted a specific measure therefor, in a statute which seems to have been well studied by those who framed it.
If it should be thought reasonable, that a trustee, who at the first term discloses effects or credits in his hands, should be entitled to indemnify himself for the charges and expenses of the suit, out of the funds, the legislature will probably make some suitable provision therefor. Mr. Dane, in his Abridgment, considers it a hard case upon the trustee, to be obliged to sustain these expenses, in cases where he is ready to pay or surrender what he has in his hands; and we think so too ; but we do not think that we are vested with discretionary power in the subject.
JVoie. Judgment was rendered for the balance acknowledged by the trustee to be due to Williams, with interest thereon, at five per cent, to September 5th, 1828, deducting the sum paid over at that time upon the execution.